| | |
|---|---|
| **HAROLD DEAN DEESE, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )        **ORDER** |
| | ) |
| **KODY HUGHES, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendants Kody Hughes, Garren Vance, and Alisha Hicks' Motion to Dismiss All Claims, (Doc. No. 15), in which they seek dismissal of the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has failed to exhaust his administrative remedies.

## I.    BACKGROUND

On May 16, 2018, Plaintiff filed *pro se* civil rights suit pursuant to 42 U.S.C. § 1983 for incidents that allegedly occurred at the Mountain View Correctional Institution. (Doc. No. 1). The Complaint passed initial review on claims of excessive force/failure to intervene against Defendants Hicks, Hughes, and Vance, and the remaining claims were dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). (Doc. No. 7). NCDPS returned executed waivers of service for Defendants on October 15, 2018, and they filed the instant Motion to Dismiss on December 14, 2018. On December 18, 2018, the Court mailed Plaintiff a Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) informing him of the importance of responding to Defendants' Motion, (Doc. No. 17), and Plaintiff has filed a Response, (Doc. No. 20).

1

**(1)** <u>**Complaint**</u> (Doc. No. 1)

In the verified Complaint, Plaintiff alleges that he was being escorted to segregation at around 11:00 or 11:30 PM on April 25, 2018, by Hughes, Vance, and Hicks. He was handcuffed behind his back and Hughes and Vance each had him by one arm. Vance asked Plaintiff to stop walking in the hallway near the chaplain's office because Plaintiff was "talking under [his] breath and tryen [sic] to adjust [his] left arm because of … nerve damage [he] ha[s] on [his] left side of [his] back." (Doc. No. 1 at 5). Plaintiff stopped walking and also stopped talking under his breath pursuant to Vance's instruction. Just after Plaintiff stopped, he looked up at Hicks who sprayed the left side of Plaintiff's face with pepper spray. Plaintiff was asked to start walking again and he complied and was taken to segregation. All of these events took place within 75 feet of a video camera outside the chaplain's office. Hicks said that she sprayed Plaintiff because he was pulling away from her and the other officers which is not true. Plaintiff was written up for disobeying a direct order. Plaintiff pled guilty. Plaintiff has tried to get unit management and Captain Stewart to go back and look at the camera footage that shows he was not pulling away from officers when he was sprayed. They have not done so. Plaintiff claims that his left eye was damaged and, at the time the Complaint was filed, he was still awaiting medical treatment through the sick call procedure.

Plaintiff admits that he did not file a grievance about the incident because "[he] was told by staff that [he] could not." (Doc. No. 1 at 10). Around May 10, 2018, "unit management" said they would check on it and Captain Stewart said around May 13, 2018 that he would check on it. (Doc. No. 1 at 10). Plaintiff also had family call Mountain View C.I. and they talked to the superintendent who said they would check on it.

Plaintiff asks that Defendants be terminated from NCDPS employment and at least $50,000

in damages.

 **(2)**     **Defendants' Motion to Dismiss** (Doc. No. 16)

Defendants argue that Plaintiff's claims are barred because Plaintiff failed to exhaust administrative remedies prior to filing his Complaint, and the dismissal should be with prejudice because the time to exhaust has expired without Plaintiff taking any action and amendment would be futile.

Plaintiff was required to exhaust his administrative remedies by using NCDPS's three-step procedure. Plaintiff does not assert that he completed or even attempted the administrative remedy procedure. He never filed a grievance related to this Complaint. The only reason he gives for failing to attempt to exhaust administrative remedies is that staff told him he could not. Assuming Plaintiff was actually told something to this effect by a staff member, it was most likely in response to a question about the discipline process for the incident, and not through the administrative remedy procedure, as his guilty plea in the disciplinary matter foreclosed the possible avenue of appeals as the basis for exhaustion of administrative remedies. Further, a statement by an unnamed staff member did not prevent Plaintiff from pursuing the administrative remedy procedure. Plaintiff was fully aware of the process because it is part of inmate orientation and Plaintiff has filed three grievances unrelated to this matter during the time period during which this claim arose.[1] A statement from a staff member does not rise to the level of having prevented Plaintiff from pursuing the process. At most, it would have led him to believe that he would be granted no relief if he filed a grievance. Even if that was his interpretation, he remained obligated to file a grievance even if relief could not be granted under the administrated procedure remedy process. Assuming

---

[1] These grievances were exhausted between April 1, 2017 and August 23, 2018. Defendants did not filed these grievances as exhibits because they are confidential, but Defendants will produce these documents under seal if Plaintiff disputes them or if the Court wishes to review them.

that unit management and Captain Stewart told Plaintiff that they would look into the incident on May 10 and 13, 2018, Plaintiff gave them no time to conduct a review and respond, as he filed the Complaint on May 16, 2018. While informal communication is encouraged by the administrative remedy procedure as a means of resolving an issue without resorting to a formal grievance, the informal attempt is merely an optional first act which is to be followed by the formal written grievance and three-step appeal procedure which Plaintiff ignored.

Defendants further argue that allowing Plaintiff to amend his Complaint is futile because the PLRA requires exhaustion prior to the filing of a lawsuit. He cannot now exhaust his administrative remedies because a grievance would be untimely under NCDPS Policy and Procedures as more than 90 days have elapsed since the April 25, 2018 incident. Plaintiff cannot cure this fatal flaw through amendment or dismissal and refiling so this matter should be dismissed with prejudice.

**(3)** **Plaintiff's Response** (Doc. No. 20)

Plaintiff has filed an unsigned Response in which he reiterates the allegations set forth in his Complaint. He alleges that he talked to Captain Stewart about the incident after he was released from segregation and Stewart said it would be looked into. After about two weeks, Stewart and unit management told Plaintiff that they did not have time to go back and look at the camera footage. After another week Plaintiff talked to unit management about writing a grievance. Plaintiff was told he was not allowed to write a grievance at that time because he had pled guilty to the write-up he received. He states that, "[e]ven though [he] didn't go through the grievance process, [he] feel[s] [he] was cruelly punished and excessive physical force was used to do so." (Doc. No. 20 at 3).

**(4)** **NCDPS Policy & Procedures** (Doc. No. 16-1)

NCDPS policy[2] is to provide inmates an opportunity for administrative settlement of grievances. Inmates are encouraged to use informal communications with responsible authorities at the facility where the problem arose. When this method is not possible, there are formal channels to communicate grievances.

A standard written notification of the administrative remedy procedure is given to each inmate as part of orientation. The notification instructs the inmate how and where to obtain a grievance form. In addition, each inmate receives and oral explanation of the procedure and has the opportunity to ask questions about the procedure. A copy of the administrative remedy procedure is readily available to all inmates and staff and is posted in conspicuous locations throughout the facility. The procedure is available to all inmates regardless of any disciplinary, classification, or other administrative decisions affecting the inmate.

The administrative remedy procedure has three steps. In Step 1, an inmate may submit a formal written grievance to a Facility Head, designated screening officer, or any other staff member. Screening is done within three days to determine if the grievance should be accepted, rejected, or returned pursuant to Policy. A formal written response is made to the inmate within 15 days of the grievance's acceptance. If the inmate is not satisfied with the Step 1 decision, he may request relief from the Facility Head as Step 2. The facility head may investigate the grievance or assign a staff member to do so. After completing the investigation, the Facility Head completes a form indicating the decision and the reasons for the decision, and a formal written response is made to the inmate within 20 days. If the inmate is not satisfied with the Step 2 decision, he may appeal to the Secretary of Public Safety through the Inmate Grievance Examiner in Step 3. This

---

[2] The Court takes judicial notice of this portion of NCDPS's Policy and Procedures as a matter of public record. See Fed. R. Ev. 201.

appeal must be made in writing within 24 hours of notification of the Step 2 decision. The

Executive Director or IGE reviews the grievance and an independent investigation may be

conducted. The IGE orders appropriate relief or denies a grievance then forwards any order to the

SPS within 20 days of the appeal, then the Director of Prisons forwards a written response to the

SPS. The SPS reviews the Director of Prisons' comments and approves the decision of the IGE or

makes written findings that the ordered relief is not appropriate. The SPS's final decision is

delivered to the inmate within 30 days of the IGE's decision. If the inmate does not receive a timely

response at any level, the absence of a response is considered a denial from which the inmate can

appeal. Further, a grievance may be rejected if it challenges a disciplinary action or if "[t]here has

been a time lapse of more than ninety (90) days between the alleged event and submission of the

grievance." (Doc. No. 16-1 at 5).

##    II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it

does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A claim is stated if the

complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts

all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but

does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of

further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250,

255 (4th Cir. 2009). Nor does a court accept as true "unwarranted inferences, unreasonable

conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th

Cir. 2009).

## III.    DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any "available" administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is mandatory, and courts lack the authority to waive that requirement. Id. at 524; Jones v. Bock, 549 U.S. 199, 211 (2007). Although the PLRA does not define the term "available," the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through not fault of his own, was prevented from availing himself of [the administrative remedy]." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion of administrative remedies is mandatory even where the inmate claims that exhaustion would be futile. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. A prisoner is not entitled to exhaust administrative remedies during the pendency of an action. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).  The PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

An inmate's failure to exhaust administrative remedies is an affirmative defense so the defendants bear the burden of proving that plaintiff failed to exhaust available administrative remedies prior to filing a civil action. Jones, 549 U.S. at 216-17 (failure to exhaust administrative remedies is an affirmative defense); Moore, 517 F.3d at 717 (a complaint may be dismissed on

7

exhaustion grounds so long as the inmate is first given the opportunity to address the issue). The Supreme Court has recognized three potential situations that render administrative remedies unavailable to a complaining inmate: (1) the administrative procedure operates as a dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme is so opaque that it becomes, practically speaking, incapable of use; and (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Ross v. Blake, 136 S. Ct. 1850, 1860 (2016).

Plaintiff states in his verified Complaint that he did not file a grievance about the incident because "[he] was told by staff that [he] could not." (Doc. No. 1 at 10). Defendants counter that any such statement by staff members was "most likely" in response to a question about the discipline process, for which the administrative remedy procedure is unavailable. (Doc. No. 16 at 4). They argue that Plaintiff knew about administrative remedy procedure from inmate orientation and filing other grievances in unrelated incidents and, at most, such a statement would have led Plaintiff to believe that he would be granted no relief if he filed a grievance. Even if that was his interpretation, he remained obligated to file a grievance even if relief could not be granted under the administrated procedure remedy process.

Accepting Plaintiff's allegations in his verified Complaint as true, he has adequately alleged that prison officials misrepresented the unavailability of a grievance. See generally Ross, 136 S. Ct. at 1860 n. 3 (2016); see, e.g., Davis v. Hernandez, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable ... if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted)); Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011) ("[I]f prison officials misled [a prisoner] into thinking that ... he had done all he needed to initiate the grievance

process," then "[a]n administrative remedy is not 'available'"). Defendants' supposition that any statement by staff about grievance unavailability referred to the disciplinary proceeding is not supported by any evidence and does not overcome Plaintiff's allegations in his verified Complaint which must be construed in his favor. Defendants have failed to satisfy the motion to dismiss standard, however, this does not preclude the filing of a properly supported motion for summary judgment. See Germain v. Shearin, 725 Fed. Appx. 225 (4th Cir. 2018) (vacating dismissal because plaintiff stated in his verified complaint that he completed all three steps of the administrative remedy process; those allegations must be accepted as true and draw all reasonable inferences in his favor, and defendant failed to meet the burden of proving that plaintiff did not complete the administrative review process).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss All Claims, (Doc. No. 15), is denied.

**IT IS, THEREFORE, ORDERED** that Defendants Hughes, Vance, and Hicks' Motion to Dismiss All Claims, (Doc. No. 15), is **DENIED**.

Signed: February 12, 2019

Frank D. Whitney
Chief United States District Judge

9